And with the motions, one motion to be heard, USA v. Trevon Gross, Yuri Lebedev, and Anthony Muggio. Good afternoon, Your Honors. Henry Klingerman for Pastor Trevon Gross, who is present in court. Your Honors, we are asking this court to permit Pastor Gross to remain at liberty during the pendency of his direct appeal from his conviction. None of the elements of the bail statute are contested save one. That is whether we've raised a substantial question or a close question susceptible to a second answer by this court. We've raised not one, but three substantial questions, and we'd ask Your Honors to consider them carefully before granting us bail pending appeal. The first issue relates to a admission of co-conspirator statements alleged that were offered against Pastor Gross. This is a bribery case involving the operation of a credit union. The only evidence utilizing the word bribery in the entire trial came out of these alleged co-conspirator statements that were offered against Pastor Gross after he withdrew from the conspiracy. How do we know he withdrew from the conspiracy by the time these statements were offered? Because the person who uttered the statement that this was a bribery scheme testified at the trial and on cross-examination that by the time these statements were made, Pastor Gross had withdrawn from the conspiracy. In other words, the government's own witness established Pastor Gross's withdrawal from the conspiracy. This court- Using the word withdrawn in its legal sense or in a colloquial sense? In the legal sense pertaining to co-conspirator statements, Your Honor. But how do we know, sorry, how do we know that the statement was made in the legal sense? Did this co-conspirator or former co-conspirator know enough law to when he said that, say it in a way that is legal? Isn't it up for us to look to see what the actual withdrawal was if it met the legal requirements? Yes, Your Honor, I'd ask you to take that look. When the witness described how the defendant had withdrawn from the conspiracy, he was speaking in very practical, real world terms. In fact, the defendants, excuse me, the co-conspirators were attempting to draw the defendant back into the co-conspiracy at the time these statements were made. And in the government's opposition to our bail motion, they talk about how these co-conspirators were having these conversations among themselves in an effort to reconcile with the defendant. If they had to reconcile with him, it's only because they had had a falling out over the alleged conspiracy to begin with. So these co-conspirator statements, as this court has found in various precedents, should not have been offered under the co-conspirator exception once the defendant withdraws from the conspiracy. It's a close question. It's a question that this court will be asked to answer on the appeal. And again, we'd ask it to be a basis for permitting Pastor Gross to remain at liberty. The second issue, your honors, is a confrontation clause violation based on an extraordinary development that occurred mid-trial. The only witness in the case against Pastor Gross who used the term bribery testified that during the course of the investigation, the- That's the second time you've said the only witness who used the term bribery. Using the term bribery isn't an essential of evidence to show bribery. One can show bribery through witnesses who will never use the term bribery. So when a lawyer makes an argument like that, the only witness who used the term bribery, that kind of sets off an alarm, be very untrusting of whatever is about to be said. Let me address the alarm, your honor. The reason I point out it's the only witness who uttered the term bribery is because none of the other witnesses were asked any questions using the word bribery or any analogous term to bribery. Second statement not to be trusted for the same reason. Using the term bribery just isn't essential to establishing bribery. It is in this case because the defense in this case- Very few, for example, very few robbers, thieves use the word larceny in their conversation with one another. But nonetheless, one can prove larceny without using the word larceny. I understand, your honor, but the defense in the case, indeed the issue for the jury in the case, was whether a bribe had actually occurred or whether this was a good faith payment. That's usually the issue when it's a bribery prosecution. Yeah, it's one of many issues that can arise, but in this particular case, it was the issue. And the point is, your honor, as the district court judge found, because this witness was the person who described this as a bribery scheme, his testimony was essential to the government's case, which is why when he revealed in his direct testimony that during the course of the investigation, a federal agent, a secret service agent, had authorized him to take the illegal proceeds of the money laundering scheme that was associated with this indictment. That the judge, the district court judge, literally stopped the trial and looked at how this witness had been permitted to take this money. And then we were permitted to bring in the secret service agent to testify about the circumstances. But after a mere few minutes of questioning, we were told we were no longer permitted to ask her any questions, and thus confront her with a prior inconsistent statement that she had made about that very issue. In other words, she testified that she wasn't sure whether she had authorized the witness to take money. But she had said, quote unquote, unequivocally the day before that she had not authorized him to. We weren't permitted to cross-examine on that basis. Thank you, Mr. Klingerman. For the defendant, Labadev. Thank you, your honors. My name is Eric Kreisman. I represent Yuri Labadev. Your honors have seen my papers in support of Mr. Labadev's bail pending appeal motion. The two issues we raise, first, number one, address this cross-examination, the restricted cross-examination of the agent. And the restriction by the judge prevented us from establishing that the agent had, that indeed, the key cooperating witness in this case against my client, not only because he used the word bribery, but because he was the only person who said that my client had prior knowledge of payments, of these illicit payments, to the pastor. And who had known my client personally, and whose testimony, he was the only cooperating witness who had a criminal record, who didn't have a criminal record. So in this case, this witness was critical. And the government, of course, as it generally will do, touts the truth-telling provisions of the cooperation agreement. What will happen if you don't tell the truth will rip up the agreement. And does it depend upon the outcome? No. In this case, we had an opportunity to prove with an agent of the government, who knew all about the investigation, who understood that at the time that CoinMX was going to close down. And that agent said unequivocally, she did testify unequivocally, I would never have told this witness that he could take money from the corporation. But since we weren't closing it down at the time, which was her mistake, she just did not remember. As I recall, we weren't closing this business down at the time. He can continue to do, I would have told him he could have continued to do what he was doing before with respect to the business. Now, had we have shown, had I have been able to show the law enforcement memoranda that she received, the briefings on this operation, she would have easily recalled that this business was going to be shut down. And then the agent would have said, we would have been able to establish that unequivocally, she would never have told the key cooperating witness in these circumstances that he could take a salary and a nice little bonus for himself. As that cooperating witness testified and told the government in a proper session. And then the government would have been left to explain to the jury whether it was going to rip up the cooperation agreement. Or whether it was standing by this person's testimony. Instead, the jury was able to walk away with the impression, which the government wanted to argue, that there was some sort of misunderstanding. There would not have been room for that argument. We should have at least had the opportunity to present to the jury that there was no room for any misunderstanding here. And so for those reasons, I think we present an issue that is substantial. Did the court give any reason for cutting you off? The court gave the reason that she thought it would turn into a side show. Which she curbed her own, the very purpose that she stated. But the way you were questioning was moving things away from the issue in this case. Though it might have had some, and you described what the connection was. But that the focus of the jury was being turned so much to something else, that she thought that this would hamper the jury in focusing. Now, isn't that something where we might or might not agree, but is very much in the court's discretion? It's, in this case, I would say that it's not in the court's discretion. The court's discretion, the court understood the importance of us being able to impeach the credibility of a key witness. I didn't even get to question, I proffered to the judge what I would, how I would question. It would take a very short period of time just to refresh this witness's, the agent's recollection that this business was going to be shut down. And it was very important to the case, because it goes to the integrity of the investigation. On the second issue, which is the bank fraud count. And the reason why, I think that we have two cases that are critical. The Supreme Court's cases in Shaw and Loughran. In the Shaw case, the bank fraud statute was prosecuted under subsection one. And the issue was the defendant's use of a account holder's count numbers to fraudulently transferred funds. His argument was, I didn't defraud the bank, I defrauded the account holder. The government said, I mean, the court says, no, you defrauded the bank too, because the bank had a property interest, even as a bailee, in the account holder's account. And so the difference here though, okay, even though it's being prosecuted under subsection two, which means under the custody of the bank, here you had something that doesn't, didn't exist in either the Shaw case or the Loughran case. Which is a willing buyer of these bitcoins, which was not illegal in itself, from a willing seller. And the bank was deceived by, as to the nature of the transaction, but wasn't deprived of any property by false representations. Because as the Loughran, as the Shaw case, as the Shaw court held, I mean stated in dicta at 127, the bank is a bailee and has property interest is superior to everyone else except for the account holder. Here, the account holder's property interests are superior. So the account holder had the choice to purchase the bitcoins. The bank was deceived, but no one was deprived of any property by fraudulent statements. Thanks very much. Thank you. Mr. Noble. May it please the court, good afternoon, your honors. My name is Daniel Noble, I represented the government below, and I represent the government on appeal. The defendants bear a high burden to obtain the relief that they seek. Not only because there's a presumption in favor of detention after a conviction and sentencing, but also because of the nature of the claims that they face here. With respect to the evidentiary issues, I'll call it the special agent buyer curtailment issue and the co-conspirator statements issue, both of those will be reviewed subject to harmless error. And even if there were any error, and we're not conceding that there were, this court would necessarily find that those errors were harmless in light of the overwhelming evidence of both of the defendant's guilt. In this case, we're talking about a bribery scheme in which the quid pro quo was laid out in documentary evidence, specifically emails among the co-conspirators, including Mr. Gross. There was, in fact, a co-operator, a co-conspirator, who testified against both defendants other than Mr. Foynt. And that's Mr. Hill's testimony, and I'd urge the court to review that testimony, because it directly implicates both Mr. Gross and Mr. Foynt in the conspiracy, even if Mr. Hill does not use the word bribery himself. In addition, the- Mr. Hill, a previously convicted defendant? Yes, Judge Calabresi, he did have a criminal record. That's a distinction that they are making, but you're saying that doesn't matter? I think that's a distinction without a difference, because under that analysis, the court would necessarily have to draw all inferences in favor of the government, including credibility determinations. And the co-operator's testimony is corroborated by not just the emails I referenced, but also text messages, and a recording, including a recording in which both of these defendants participated, in which they discussed paying an additional $50,000 bribe in exchange for control of the credit union. Sorry, you're saying that the court certainly needs to take the evidence in the light most favorable to the government on an issue of sufficiency. But are you saying that we need to take the evidence in the light most favorable to the government on the issue of harmlessness? Well, I apologize, I misspoke to that extent. Not on harmlessness, the court would have to look at the full totality of the evidence in determining whether or not there was sufficient evidence to conclude beyond a reasonable doubt that any error would have been harmless. In any event, with respect to the co-conspirator statement's issue, we believe counsel for Mr. Gross has defined the- Here you have an additional burden, because they don't need today to prove that it wasn't harmless. They need to prove, to show, that there is a significant chance of its being found not to be harmless. Assuming, of course, that there was error, which is another matter. But all they have to show is a significant chance on the question of bail. This isn't the question of the ultimate. So that you have two burdens on the harmless thing that don't run in your favor. Yes, Judge Calabresi, but we don't think that they've met their burden of showing that there's a significant chance. Because with respect to the co-conspirator statement's issue, they defined the conspiracy way too narrowly. They defined it as a conspiracy to commit bribery. But there were at least two other objectives of the conspiracy that were charged, which were to deceive the National Credit Union Administration and to make false statements to the National Credit Union Administration. And that conspiracy clearly continued through 2015, because the entire success of the endeavors that they were engaged in depended on tricking the NCOA, preventing the NCOA from discovering the underlying scheme. Because even if Mr. Gross broke off from working with the collectibles club with Mr. McCharge, who Judge Nathan reasonably and correctly found was a co-conspirator from the outset of the conspiracy, they continued to work together. And in order for that endeavor to succeed, they had to continue in the original objectives of the conspiracy, which were to deceive the NCOA. With respect to the special agent buyer issue, that again, that is also not a substantial question. First of all, Judge Nathan did not even, she had the discretion to deny their request to call her in the first place, as both extrinsic evidence and falling outside the scope of impeachment by contradiction. But even if, given that she decided to allow them to call special agent buyer, it ultimately, as Judge Nathan found, turned into a sideshow. The defendants agreed ex ante to certain limitations on the questioning, but they did not limit their questioning to those limits that they themselves agreed upon. And Judge Nathan was fully within her discretion to curtail the examination when they continued to try to stray beyond that questioning. And then, with respect to the bank fraud point that Mr. Kreitzman raised, I believe he gets it, I submit, he gets it wrong. He, Mr. Lebedev, his client was prosecuted only under the second prong of the section 1344, which only requires not an intent to defraud, but an intent to obtain money or property from a bank through false representations or omissions. And that's exactly what occurred here. Mr. Kreitzman, I believe, conceded his defendant and his co-conspirators deceived the banks. They lied to the banks in order to convince the banks to process the Bitcoin transactions. And in doing so, they tricked the banks into releasing funds of their customers that were on deposit at the banks. And that's sufficient under the Supreme Court's decision in Laughran to uphold the conviction under the bank fraud statute. I also wanted to raise just one last point with respect to the other claims that would be subject to de novo review. And that would be the constructive amendment claim that Mr. Gross raises, and then the sufficiency of the evidence on the bank fraud and wire fraud. Those claims, even if the court were to find that there was error with respect to those claims, under this court's decision in Randall, because the defendant's convictions on other counts with which they were charged would stand, that would be sufficient basis alone to deny bail pending appeal. So unless your honors have any further questions, we would rest on our submissions. Just quickly, a clerical question. The custodial status of each of the defendants is what? Your honor, this court granted their motions for a stay of surrender pending the outcome of this motion for bail pending appeal. What's that? Except for Mr. Mergio, who is not appearing today. He is incarcerated, and he is appearing pro se. All right, thank you very much. We'll reserve decision.